## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**NILDA FORTES-CORTES**, *et al.*,

     Plaintiffs

     v.                               Civil No. 14-1892 (BJM)

**ALEJANDRO GARCIA-PADILLA**, *et al.*,

     Defendants.

## OPINION AND ORDER

Nilda Fortes-Cortes ("Fortes"), personally and on behalf of her daughter, DRF ("plaintiffs"), sued Alejandro Garcia-Padilla ("Garcia") in his official capacity as Governor of Puerto Rico, Rafael Roman Melendez ("Roman") in his official capacity as Secretary of the Puerto Rico Department of Education ("DOE"), and the Commonwealth of Puerto Rico (the "state") ("defendants"). Plaintiffs alleged that defendants have failed to provide DRF with a free appropriate public education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and seek preliminary and permanent injunctive relief, attorney's fees, and costs. Docket No. 1 ("Compl.") ¶¶ 1-2. Before the court is defendants' motion to dismiss for failure to state a claim and lack of subject matter jurisdiction. Docket No. 20 ("Mot."). Plaintiffs opposed. Docket No. 21 ("Opp."). The case is before me by consent of the parties. Docket No. 40. For the following reasons, defendants' motion is **denied**.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may move to dismiss for lack of subject matter jurisdiction. Courts are obligated to address questions of subject matter jurisdiction before the merits of a case. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)). Where the movant challenges the plaintiff's assertion of subject

matter jurisdiction solely on the pleadings, the court takes the complaint's jurisdictionally significant facts as true and assesses "whether the plaintiff has propounded an adequate basis for subject matter-jurisdiction." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001).

Similarly, when faced with a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor" to determine whether the complaint states a claim for which relief can be granted. *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). These facts and inferences may be augmented "with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

Dismissal under Rule 12(b)(6) is inappropriate if the complaint provides "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ocasio-Hernandez v. Fornuno-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). "A short and plain statement needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This requires that the complaint contain sufficient facts "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 557).

In making this determination, courts employ a two-pronged approach, first identifying and disregarding statements in the complaint that offer "legal conclusion[s] couched as . . . fact[]" or "[t]hreadbare recitals of the elements of action." *Ocasio-Hernandez*, 640 F.3d at 12 (quoting *Iqbal*, 556 U.S. at 678) (alteration in original). All

non-conclusory factual allegations are treated as true, "even if seemingly incredible." *Id.*
at 12 (citing *Iqbal*, 556 U.S. at 680-81). If the complaint's properly pleaded factual content,
read as a whole, "'allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged', the claim has facial plausibility." *Id.* (quoting *Iqbal*,
556 U.S. at 678).

## BACKGROUND

DRF is registered with the DOE as a student with disabilities. Compl. ¶ 10. She
suffers from mental retardation, Down Syndrome, chronic hidradenitis, and other ailments
affecting her educational needs. *Id.* ¶¶ 8, 56. She resides with Fortes, her mother and legal
guardian. *Id.* ¶¶ 7, 9.

In 2005, Fortes filed an administrative complaint against the DOE, requesting
transportation reimbursement for driving DRF to school. *Id.* ¶¶ 22-23. In 2007, the
complaint was resolved by stipulation; the DOE agreed to reimburse Fortes for
transportation costs incurred driving DRF to school at $20.00 per roundtrip. *Id.* ¶ 24. A
few months later, Fortes filed another administrative complaint, complaining that the DOE
had not provided a FAPE to DRF and requesting that the DOE also reimburse
transportation costs for driving DRF to therapy sessions. *Id.* ¶¶ 26-28. In September, after
a hearing, an administrative law judge ("ALJ") ordered that Fortes be reimbursed at rates
certified by the Puerto Rico Public Service Comission ("PSC"), that the DOE purchase
placement for DRF at Colegio de Rehabilitación Integral ("CODERI"), and that DRF had
the right to an individualized learning system in a classroom of ten students or fewer. *Id.*
¶¶ 29-32.

On May 4, 2011, an Individualized Educational Plan ("IEP") Team Meeting was
held. *Id.* ¶ 45. An IEP is a document that sets out the needs of and services required for a
special education student for the school year. *Id.* ¶ 46. The IEP developed at the meeting
provided that DRF would be enrolled at CODERI for the following year. *Id.* ¶ 49. Upon
arriving at CODERI, plaintiffs were informed that DRF was no longer part of CODERI

due to complaints Fortes had made the previous year.  *Id.* ¶¶ 52-54.  The DOE informed Fortes that it would find another placement for DRF.  *Id.* ¶¶ 60-61.  After several months visiting different schools, only the Efraín Sánchez Hidalgo School ("ESH") had a classroom size of ten or fewer, but it lacked electricity or an air conditioner, which DRF required due to her chronic hidradenitis. *Id.* ¶¶ 74-77.  Fortes filed another administrative complaint requesting that the DOE provide a FAPE for DRF and reimburse transportation costs in accordance with the 2007 settlement agreement.  *Id.* ¶ 80.  In February 2012, the ALJ ordered the DOE to furnish ESH with electric power and air conditioning and have DRF's psychologist visit ESH to provide an expert opinion on DRF's integration into ESH. *Id.* ¶¶ 92-93, 96. The psychologist concluded that ESH was not an appropriate placement for DRF.  *Id.* ¶ 96.

In October 2012, Fortes filed a complaint in the this court alleging that the DOE was depriving DRF of an FAPE and seeking to enforce the 2007 settlement agreement and the 2012 administrative order.  *Id.*  ¶ 112; *Fortes-Cortes v. Dep't of Educ.* (*Fortes-Cortes I*), Civil No. 12-1900 (GAG), Docket No. 1 (D.P.R. Oct. 29, 2012).  While the complaint was pending, the DOE agreed to provide summer schooling to DRF; however, Fortes was informed that there were no teachers available to provide DRF with any classes.  *Id.* ¶¶ 119-24.  In July, the parties submitted a joint proposed order which the court adopted in full.  *Id.* ¶¶ 125-126.  The court dismissed plaintiffs' claims and ordered that the Tomás Carrión Maduro School ("TCM") would be an appropriate placement for DRF if certain conditions were met: (1) that special education teachers be available, (2) that DRF be placed in a classroom with ten students or fewer, and (3) that the school have an adequate independent living classroom with several particular furnishings and appliances.  *Fortes-Cortes I*, Civil No. 12-900 (GAG), Docket No. 79 (D.P.R. Jul. 10, 2013).  The court also ordered the DOE to reimburse Fortes for transportation costs for trips to school and therapy sessions at rates certified by the PSC.  *Id.*

In mid-August 2012, a hearing was held on plaintiffs' motion complaining that the independent living classroom was not furnished with the equipment listed in the court order and that it had three autistic students.  Compl. ¶¶ 132, 134.  On November 26, plaintiffs filed another motion complaining that the DOE had refused to pay transportation reimbursement at rates certified by the PSC.  *Id.* ¶ 136.  During DRF's first semester at TCM she received no actual schooling, spending her time solely on coloring books; Fortes, meanwhile, was barred from the campus.  *Id.* ¶ 139.  On February 14, 2014, plaintiffs filed another motion complaining that the DOE was not providing DRF with a proper education.  *Id.* ¶ 140.  On March 3, the DOE informed the court that it had hired a new teacher and instructed her on DRF's educational needs.  *Id.* ¶ 144.

During DRF's second semester, DRF continued without receiving schooling and Fortes remained barred from TCM.  *Id.* ¶ 146.  Toward the end of the semester, TCM's director made efforts to incite school personnel and parents against plaintiffs, leading to public demonstrations.  *Id.* ¶ 147.  On May 8, an IEP Team Meeting was held where Fortes expressed her concern for DRF's safety and complained that the DOE was delaying transportation reimbursement.  *Id.* ¶¶ 149-151.  Another IEP Team Meeting was held in May, where Fortes complained that DRF had not received progress notes for the second semester and that TCM was not complying with the consent order entered in *Fortes-Cortes I*.  *Id.* ¶ 155.  The DOE agreed to find and purchase new placement for DRF, provide summer schooling, and provide three years of compensatory educational services.  *Id.* ¶¶ 156-58.

A placement alternative was identified at an IEP Team Meeting on June 9, 2014.  *Id.* ¶ 159.  Fortes visited the proposed school and found it inadequate, a position she expressed at an IEP Team Meeting on June 16.  *Id.* ¶¶ 160-61, 165.  The DOE recommitted to provide DRF with summer schooling and stated that classes would begin the following day, June 17, and run through July 16.  *Id.*  ¶ 166.  On June 17, however, plaintiffs

discovered that classes had begun weeks before, with only eight days of summer school remaining. *Id.*

On August 11, 2014, an IEP Team Meeting was held where the parties agreed that (1) DRF would be placed at the Emilio del Toro School ("EDT") for the 2014-2015 school year; (2) no other students would be in the same classroom as DRF; (3) the DOE would transfer all equipment purchased for DRF from TCM to EDT; and (4) the DOE would provide DRF with one-on-one instruction from a teacher (i) certified in special education, (ii) experienced in handling students with Down Syndrome, (iii) with more than two years' experience working with students in the process of transition to adult life, (iv) willing to work weekly in various settings, and (v) willing to cooperate with specialists who assist DRF. *Id.* ¶¶ 174-80. The DOE stated that it would appoint the special education teacher on or before August 15. *Id.* ¶ 181. By August 21, the DOE had yet to name the special education teacher or transfer much of the equipment, and what equipment had been transferred was damaged or broken. *Id.* ¶ 183.

On August 25, 2014, Garcia issued an ultimatum to Roman, giving him until August 29 to make all appointments of individuals supposed to provide assistance to students. *Id.* ¶ 184. Despite the ultimatum, the DOE did not assign a teacher that met the requirements agreed upon at the August 11 IEP Team Meeting. *Id.* ¶ 225. To date, DRF has not received schooling, though she has continued to attend therapy sessions. *Id.* ¶¶ 227, 231, 235. In September, the DOE refused to reimburse transportation expenses at rates certified by the PSC; as a result, Fortes has not been reimbursed since August 2014. *Id.* ¶ 238.

## DISCUSSION

Plaintiffs claim that defendants' failure to comply with the August 11 IEP Team Meeting agreements constitutes a deprivation of a FAPE to DRF in violation of the IDEA, and that defendants have failed to abide by this court's order as to transportation reimbursement.

Defendants move to dismiss on three grounds: that (1) the court lacks subject matter jurisdiction because plaintiffs have failed to exhaust administrative remedies, (2) that plaintiffs' claims relating to events prior to 2014 are barred by res judicata, and (3) that plaintiffs have pleaded insufficient facts to state a valid claim.

## I.        The IDEA

The IDEA requires states that receive federal special education funds to provide all handicapped children in their jurisdiction with a FAPE.  20 U.S.C. § 1412(a)(1)(A).  "A FAPE encompasses special education and support services provided free of charge."  *C.G. ex rel. A. S. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284 (1st Cir. 2008) (citing 20 U.S.C. § 1401(9)).

The "'primary vehicle' for delivery of a FAPE is an IEP."  *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 34 (1st Cir. 2012) (quoting *Lessard v. Wilton-Lyndeborough Coop. Sch. Dist.*, 518 F.3d 18, 23 (1st Cir. 2008)); *see Amann v. Stow Sch. Sys.*, 982 F.2d 644, 646 (1st Cir. 1992).  "An IEP must be 'individually designed' to suit a particular child."  *D.B.*, 675 F.3d at 34 (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 201 (1982)). It must include, "at a bare minimum, the child's present level of education attainment, the short- and long-term goals for his or her education, objective criteria with which to measure progress toward those goals, and the specific services to be offered."  *Lessard,* 518 F.3d at 23 (citing 20 U.S.C. § 1414(d)(1)(A)).

"To ensure the continued adequacy of a child's IEP, the IDEA requires that it be reevaluated annually through a collaborative process that involves the child's parents and educators."  *D.B.*, 675 F.3d at 34; *see* 20 U.S.C. § 1414(d).  Should this process break down and no consensus emerge, the child's parents may challenge the school system's failure to implement the IEP, its handling of the IEP process, or the substantive adequacy of the IEP itself by demanding an administrative due process hearing before a designated state educational agency.  *See* 20 U.S.C. § 1415(f)(1)(A); *Van Duyn ex rel. Van Duyn v. Baker*

*Sch. Dist. 5J*, 502 F.3d 811, 821 (9th Cir. 2007).  After a hearing, the aggrieved party "may then appeal from the hearing officer's final decision to either a federal or state court of competent jurisdiction." *Lessard*, 518 F.3d at 24 (citing 20 U.S.C. § 1415(i)(2)(A)).

## II.  Exhaustion of Administrative Remedies

Defendants first argue that this court lacks subject matter jurisdiction because plaintiffs have failed to exhaust administrative remedies.  Under the IDEA, "plaintiffs must exhaust [the] IDEA's impartial due process hearing procedures in order to bring a civil action under [the IDEA] or any 'such law[] seeking relief that is also available, under [the IDEA]." *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 53 (1st Cir. 2000) (quoting 20 U.S.C. § 1415 (*l*)).  This requirement allows "the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989).

There is a circuit split as to whether failure to exhaust administrative remedies under the IDEA deprives the court of subject matter jurisdiction.  *Mr. H. v. Regional Sch. Unit 21*, No. 2:14-cv-148-GZS, 2015 WL 846791, at *5 n.5. (D. Me. Feb. 26, 2015).  The First Circuit has not ruled on the matter, affirming dismissals based on both Rule 12(b)(6) and 12(b)(1).  *Compare Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 69 (1st Cir. 2002) (dismissing for failure to state a claim), *with Christopher W.*, 877 F.2d at 1098 (finding that failure to exhaust deprives court of subject matter jurisdiction).  I need not decide whether failure to exhaust deprives the court of subject matter jurisdiction because, as will be discussed further, defendants are not entitled to dismissal on this ground however their argument is characterized.

The exhaustion requirement is not without exceptions.  *See Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000).  "A plaintiff does not have to exhaust administrative remedies if she can show that that the agency's adoption of an unlawful general policy would make

resort to the agency futile, or that the administrative remedies afforded by the process are inadequate given the relief sought." *Id.* at 210-11.  Additionally, "courts may also exercise discretion if exhaustion 'will not only waste resources but also work severe harm upon a litigant.'" *Id.* at 211 (quoting *Ezratty v. Puerto Rico.*, 648 F.2d 770, 774 (1st Cir. 1981)).

As an initial matter, plaintiff's transportation-reimbursement claim does not implicate the IDEA's exhaustion requirement.  Properly viewed, that claim is not brought under the IDEA.  It is, rather, a request for enforcement of the stipulated order entered in *Fortes-Cortes I*.  "Enforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance . . . requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).  Where, as here, the terms of the settlement agreement are "made part of the order of dismissal . . . by incorporating the terms of the settlement agreement in the order . . . and there is a breach of the agreement" it is tantamount to a violation of the order, "and ancillary jurisdiction to enforce the agreement . . . exist[s]." *Id.* at 381; *see Fortes-Cortes I*, Civil No. 12-1900 (GAG), Docket No. 79 (D.P.R. Jul. 10, 2013).

Plaintiffs' second claim is a different story.  In seeking to enforce the agreement reached at the August 11, 2014, IEP Team Meeting, plaintiffs challenge the implementation of DRF's IEP.  This is a claim under the IDEA, and the statute therefore mandates exhaustion.  Defendants argue that plaintiffs have not participated in an administrative hearing as to this issue and have thus failed to meet the exhaustion requirement.  Plaintiffs admit that they have not sought an administrative hearing.  But they invoke the futility exception, arguing that the DOE's pattern of recalcitrance makes clear that requiring plaintiffs to obtain yet another administrative order would accomplish nothing but to further delay DRF's receipt of an appropriate education.[1]  I agree.

---

[1] In making their opposition, plaintiffs incorporate by reference the arguments made in their motion for preliminary and permanent injunction.  Opp. ¶ 2; see Docket No. 2

This is far from the first time plaintiffs have sought to compel the DOE to provide DRF with the education she is entitled to by law. Plaintiffs have availed themselves of the IDEA's administrative procedures on multiple occasions, beginning in 2007. In every instance, they have either settled or obtained a favorable administrative ruling. But in every instance the DOE has failed to comply. Indeed, it was the DOE's lack of compliance that prompted plaintiffs to seek relief in this court in 2012. Even after having their settlement agreement incorporated into the court order, plaintiffs had to file motions to compel the DOE to comply with the order's terms. *See Fortes-Cortes I*, Civil No. 12-1900 (GAG), Docket Nos. 92 (D.P.R. Aug. 2, 2013), 155 (D.P.R. Dec. 5, 2013).

The IEP Team Meetings seeking alternative placement for DRF after TCM's failure to provide DRF with any education resulted in agreements between the parties. The DOE stipulated that it would provide compensatory education through summer schooling and individualized education at EDT. The DOE, however, did not fully comply with either. It provided only 8 out of 21 days of summer classes it committed itself to, and failed to either adequately furnish EDT or appoint a teacher pursuant to the stipulations.

The facts, taken as true and viewed in plaintiff's favor, show the DOE's willingness to disobey both administrative and district court orders. Agreements reached at the IEP Team Meeting have not been honored, leading only to further meetings where the process begins anew. As a result, DRF has gone over three years without receiving any meaningful education. To have plaintiffs seek an administrative hearing would further keep DRF from receiving the education she is entitled to, and, given the DOE's past conduct, there is no guarantee that the DOE would comply with an administrative order. Therefore, I find that having plaintiffs seek an administrative hearing would be an exercise in futility, result in severe harm to DRF, and hold plaintiffs have met the exhaustion requirement.[2] *See Nieves-*

---

[2] Defendants have presented an additional basis for why this court lacks subject matter jurisdiction. They assert, without more, that the DOE cannot be held liable because DRF is not enrolled in a school by decision of her guardian and is thus not part of the DOE's system. Mot. 12.

*Marques v. Puerto Rico*, 353 F.3d 108, 116 (1st Cir. 2003) ("It cannot be that a court is powerless under IDEA to issue injunctive relief when the school system neither appeals nor complies with a valid administrative order and its continuing obligations.").

### III.    Claim Preclusion

Defendants next argue that plaintiffs' prior suit precludes them from bringing this action insofar as it refers to events occurring in or before 2014.[3]  Plaintiffs argue that their present claims do not arise from the same events as those litigated in *Fortes-Cortes I*. Though their complaint alleges many of the same facts on which their prior claims were based, plaintiffs contend that those facts are meant only to provide background as to the DOE's history of noncompliance.

"Federal res judicata principles govern the res judicata effect of a judgment entered in a prior federal suit." *In re Iannochino*, 242 F.3d 36, 41 (1st Cir. 2001).  The doctrine of claim preclusion, or res judicata, "holds that a 'a final judgment on the merits of an action precludes the parties or their privies from relitigating [claims] that were or could have been raised in that action.'"  *Monahan v. City of N.Y. Dep't. of Corr.*, 214 F.3d 275, 284 (2nd Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  This doctrine exists to promote fairness and efficiency by preventing "vexatious or preventative litigation." *Caballero-Rivera v. Chase Manhattan Bank, N.A.*, 276 F.3d 85, 86 (1st Cir. 2002).

Claim preclusion applies where "(1) the earlier suit resulted in a judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010).  Here, the second prong

---

This argument is conclusory, undeveloped, and unsupported by citation to authority.  I deem it waived as a result.  *See McDonough v. Donahoe*, 673 F.3d 41, 49 n.14 (1st Cir. 2012).

[3] Defendants' motion recites the standard of review for both claim and issue preclusion. Mot. 12-13.  However, defendants limit their discussion to the elements of claim preclusion. Mot. 13-14.  Consequently, I will address only the possible claim-preclusive effects of *Fortes-Cortes I* on the present case.

is dispositive.  Plaintiff's current claims are not sufficiently identical or related to those asserted in *Fortes-Cortes I*.

The First Circuit follows the "transactional approach to determine the identity of the underlying claims or causes of action." *Apparel Art Int'l., Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583-84 (1st Cir. 1995).  Under this approach, courts must determine whether the claims asserted arise from the same nucleus of operative facts as those in the prior suit. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998).   This inquiry involves the weighing of three factors: (1) "whether the facts are related in time, space, origin, or motivation," (2) "whether the facts form a convenient trial unit," and (3) "whether treating the facts as a unit conforms to the parties' expectations." *Apparel Art Int'l.*, 48 F.3d at 584.

Plaintiffs presented two causes of action in *Fortes-Cortes*: (1) the DOE's denial of a FAPE for DRF pursuant to the IDEA and (2) the DOE's failure to reimburse transportation costs at the rate established by the 2012 administrative ruling.  *See Fortes-Cortes I*, Civil No. 12-1900 (GAG), Docket No. 79 (D.P.R. Jul. 10, 2013).  These claims arose from the DOE's failure to comply with a 2007 stipulation and a 2012 administrative ruling.  *Id.*

Here, plaintiffs claim:  (1) that the DOE has failed to comply with the order in *Fortes-Cortes I* and subsequent out-of-court agreements, resulting in a failure to provide a FAPE for DRF under the IDEA; and (2) that the DOE has refused transportation reimbursement at the rate established in *Fortes-Cortes I*.  A brief comparison between the present and previous suit reveals that the claims here are based on a court order and stipulations not in existence at the time of the prior case.  *Fortes-Cortes I* addressed the enforcement of a 2007 stipulation and a 2012 administrative order.  Here, we address the enforcement of the 2013 stipulation agreement and a 2014 stipulation.  Moreover, it is absurd to suggest that actions to enforce prior orders are barred by claim preclusion.

I thus find that the second criterion is not met and that, therefore, plaintiffs' claims are not barred by claim preclusion.

## IV.    Failure to State a Claim

Finally, defendants argue that plaintiffs' claims ought to be dismissed because the complaint fails to detail sufficient factual allegations to establish a violation of the IDEA. Defendants also claim that plaintiffs have not included a single allegation that Garcia has violated the IDEA.  In making these arguments, defendants merely provide the standard of review for a 12(b)(6) motion and state that plaintiffs have failed to meet the applicable pleading standard, without any elaboration or development beyond the conclusory statements that the complaint is "filled with a myriad of conclusory allegations," Mot. 1, and that "[t]his is particularly true with regards to . . . Garcia," *id.* 2.  Due to their lack of development, I find these arguments waived.  *See Conroy v. Leone*, 316 Fed. App'x 140, 144 n.5 (3rd Cir. 2009).

Even if I were to elect to discuss the plausibility of plaintiffs' IDEA claims, the conclusion would remain the same.  Garcia is sued solely in his official capacity.  Official-capacity suits are just another way of suing the entity of which an officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.* at 166  Thus, if plaintiffs have pleaded sufficient facts to state a plausible IDEA claim against either the state or the DOE, the same would be true as against Garcia in his official capacity.

As discussed above, the only claim brought under IDEA is that the DOE has failed to provide a FAPE to DRF by failing to implement the agreement reached at the August 11 IEP Team Meeting.  Failure to implement an IEP may give rise to a claim under the IDEA. *Van Duyn*, at 821-22 (9th Cir. 2007).

As alleged in the complaint, the DOE agreed to place DRF at EDT for the 2014-2015 school year and to provide DRF with one-on-one instruction.  It further agreed to

Fortes-Cortes v. Garcia-Padilla, Civil No. 14-1892 (BJM)                                    14

appoint a special education teacher with certain qualifications by August 15.  Finally, the DOE also agreed to transfer all equipment purchased for TCM pursuant to the court's order in *Fortes-Cortes I*.  The DOE allegedly did not appoint a teacher that met the agreement's specifications, and only some of the equipment was delivered to EDT.

These facts, taken as true and with reasonable inferences drawn in plaintiffs' favor, are sufficient to create a facially plausible clam that the DOE has failed to properly implement DRF's IEP.  Plaintiffs have stated an IDEA claim against the DOE and, by extension, against Garcia in his official capacity.

## CONCLUSION

For the above reasons, defendants' motion is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of July, 2015.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge